UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charles J. Gundersen and  
Tracey A. Gundersen,

        Plaintiffs,

v.

Bank of America, N.A. and  
BAC Home Loans Servicing, LP,

        Defendants.

Civil No. 11-1939 (MJD/FLN)

**REPORT AND RECOMMENDATION**

___

Marc G. Kurzman for Plaintiffs.  
Andre T. Hanson for Defendants.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 28, 2011 on Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 3). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends the motion to dismiss be **GRANTED** and this action be dismissed with prejudice.

## I.   FINDINGS OF FACT

On December 19, 2002, Plaintiffs signed a promissory note in the amount of $300,000 and executed a mortgage for their residence with Bayside Bank. (Compl. ¶¶ 1.06-1.07.) The note was immediately endorsed to Countrywide Home Loans, Inc., and the mortgage was assigned to Countrywide Home Loans, Inc. on January 8, 2003. (Compl. ¶ 1.06; ECF No. 18, Supp. Hanson Decl. Ex. B.)[1] The mortgage assignment was recorded with the Scott County

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *Porous Media Corp. V. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Documents showing the assignment and recording of the mortgage

Recorder on January 8, 2003.  (Supp. Hanson Decl. Ex. B.)  On March 19, 2009, Countrywide Home Loans, Inc. assigned the mortgage to Countrywide Home Loans Servicing, LP.  (Supp. Hanson Decl. Ex. D.)  On April 21, 2009, Countrywide Home Loans Servicing, LP, changed its name to BAC Home Loans Servicing, LP, one of the named Defendants in this case.  (Supp. Hanson Decl. Ex. E.)  On July 1, 2011, Bank of America, N.A., the other named Defendant in this case, became the successor by merger to BAC Home Loans Servicing, LP and is the current holder of the mortgage.  Plaintiffs allege, on information and belief, that at some point Countrywide sold the loan to Fannie Mae in order for it to be securitized.  (Compl. ¶ 1.08.)  Plaintiffs further allege that Countrywide never physically transferred the note to the Fannie Mae trust.  (Compl. ¶ 1.19.)

In February 2009, Plaintiffs defaulted on their loan and were informed by a Countrywide representative that Countrywide was planning to foreclose.  (Compl. ¶ 1.27.)  Plaintiffs spoke with another Countrywide representative about the possibility of receiving a loan modification, but the representative informed them that Countrywide would not consider them for a loan modification until they had missed three payments.  (Compl. ¶ 1.26.)  In March 2009, Plaintiffs received a Notice of Mortgage Foreclosure Sale.  (Compl. Ex. A.)

By letter dated April 14, 2009, Countrywide informed Plaintiffs that they might be eligible for a loan modification under the Home Affordable Modification Program ("HAMP") and requested further information to determine eligibility. (Compl. Ex. B.)  Attached to the letter was a "Frequently Asked Questions" document that stated in part, "It may take up to 45 days for us to review your documents once they are received.  We will process your modification request as quickly as possible."  *Id.*  Plaintiffs allege that they immediately submitted a completed

---

are appropriately considered as documents of public record.

application with supporting documents. (Compl. ¶ 1.38.)  On October 20, 2009, Plaintiffs' home was sold to US Bank at a sheriff's sale.  (Compl. ¶ 1.39.)  Subsequent to the sheriff's sale, in July 2010, Plaintiffs received a letter informing them that their application for a loan modification had been denied. (Compl. ¶ 1.40.)

Plaintiffs filed suit asserting six claims: violation of the Fair Debt Collection Practices Act (FDCPA); violation of Minnesota Statute Section 325F.67 (False Advertising); defamation; fraud; promissory estoppel; and a request for declaratory relief. (Compl.)  Bank of America now moves for dismissal of all claims.

## II. RELEVANT LEGAL STANDARD

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from the allegations. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002).  For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002).  Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable

inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949.

In sum, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the court finds that the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Id.*, citing Fed. R. Civ. P. 8(a)(2).

### III.  CONCLUSIONS OF LAW

**A.    Violation of the FDCPA, Defamation, Fraud, and Declaratory Judgment (Counts I, III, IV and VI)**

Counts I, III, IV and VI, alleging violation of the FDCPA, defamation, fraud and requesting a declaratory judgment respectively, are all based on Plaintiffs' argument that Defendants did not have the legal right to foreclose on Plaintiffs' property because they did not have a legal assignment of the promissory note. (Compl. ¶¶ 2.02, 4.02, 5.02, 7.02.) Plaintiffs argue that the promissory note and mortgage were "alienated" when Bayside Bank endorsed the note to Countrywide on December 19, 2002, but did not assign the mortgage to Countrywide until January 8, 2009. (Compl. ¶ 1.21.) Plaintiffs argue that the promissory note and mortgage were alienated a second time when Countrywide did not deliver the note to the Fannie Mae Trust. *Id.* Plaintiffs allege that under Minnesota law, the alienation of the note and the mortgage renders the note a legal nullity, and as a result Defendants lacked authority to foreclose. *Id.* Plaintiffs' argument finds no support in Minnesota law.

In *Jackson v. Mortgage Elec. Registration Sys.*, 770 N.W.2d 487 (2009), the Minnesota Supreme Court answered a certified question regarding whether an assignment of the underlying indebtedness, the promissory note, must be recorded prior to commencement of a mortgage foreclosure by advertisement by the mortgagee of record.  The Supreme Court answered in the negative, holding that the mortgagee of record may foreclose even if the promissory note has been assigned and such assignment has not been recorded.  *Id.* at 489-90.  In its analysis, the Minnesota Supreme Court differentiated between ownership of the note, which constitutes equitable title, and record ownership of the mortgage which constitutes legal title.  *Id.* at 497.  The court held that "a party can hold legal title to the security instrument without holding an interest in the promissory note."  *Id.* at 500.  In *Butler v. Bank of America, N.A.*, No. 11-cv-461, 2011 WL 2728321, at *5 (D. Minn. Jul. 13, 2011), Judge Frank relied on *Jackson* in rejecting the same argument that Plaintiffs make here, that a foreclosure was invalid because the entity to whom the mortgage had been assigned did not have possession of or interest in the promissory note.

Here, Plaintiffs do not allege that Defendant lacks legal title to the mortgage. Rather, Plaintiffs allege that the promissory note was rendered a legal nullity, and that because Defendants had no interest in the promissory note, they lacked the power to foreclose.  This argument has been soundly rejected by the Minnesota Supreme Court.  There is no legal basis for Plaintiffs' contention that Defendants lacked the right to foreclose.  Therefore, all of Plaintiffs claims that are based on Defendants' allegedly wrongful foreclosure, Counts I, III, IV and VI**,** should be dismissed.

   **B.**  **Violation of the False Advertising Act (Count II)**

Plaintiffs allege that Defendant made several false statements in violation of the Minnesota False Advertising Act, Minn. Stat. § 325F.67. The False Advertising Act does not provide for a private cause of action by individual consumers. In limited circumstances, however, an individual plaintiff may bring a false advertising claim under the Minnesota Private Attorney General Act, Minn. Stat. § 8.31. The Private Attorney General Act offers "an incentive for defrauded customers to bring claims in lieu of the attorney general." *Ly v. Nystrom*, 615 N.W.2d 302, 311 (Minn. 2000). The Minnesota Supreme Court has held that "the purpose of any statute granting private citizens authority to bring a lawsuit in lieu of the attorney general, is the protection of public rights and the preservation of the interests of the state." *Ly*, 615 N.W.2d at 313. Therefore in order for a plaintiff to state a claim under the Private Attorney General Act, the private plaintiff's cause of action must benefit the public. *Id.*

Plaintiffs here fail to demonstrate that their cause of action benefits the public. In determining whether a cause of action benefits the public, courts look to the type of relief sought by the plaintiff. *Zutz v. Case Corp.*, No. 02-cv-1776, 2003 WL 22848943, at *4 (D. Minn. Nov. 21, 2003). "Where recovery is sought for the exclusive benefit of the plaintiff there is no public benefit." *Id*. In *Zutz*, the court dismissed the cause of action under the Private Attorney General Act because the plaintiff sought only compensatory damages. Similarly, in *Pecarina v. Tokai Corp.*, No. 01-cv-1655, 2002 WL 1023153, at *5. (D. Minn. May 20, 2002), the plaintiff's claim was dismissed because plaintiff sought only damages "for past and future medical expenses, pain and suffering, wage loss and emotional distress." The court reasoned that rather than benefitting the public, the redress was meant to compensate plaintiffs for their injuries. *Id.*

Here, Plaintiffs have not alleged that their suit benefits the public. Plaintiffs allege that Defendants mislead them by stating that they would act on Plaintiffs' loan modification request

within 45 days, and by stating that Plaintiffs must miss three mortgage payments in order to be eligible for a modification.  (Compl. ¶ 3.03.)  In Count II, Plaintiffs state that they are entitled to recover "damages," without further specificity.  (Compl. ¶ 3.04.)  In the general prayer for relief, Plaintiffs seek a setting aside of the Sheriff's sale of their home and compensatory damages.  (Compl. at 12.)  Plaintiffs are seeking only damages to compensate them for personal injuries suffered as a result of Defendants' statements, and such damages do not benefit the public.  Because Count II is not brought for the benefit of the public, the Court recommends that it be dismissed.

  **C.** **Promissory Estoppel (Count V)**

Plaintiffs do not object to the dismissal of Count V, their promissory estoppel claim.  The Court therefore recommends that Count V be dismissed.

### IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 3) be **GRANTED**;

2) This action be **DISMISSED with prejudice**; and

3) **JUDGMENT BE ENTERED ACCORDINGLY**.


DATED: December 2, 2011       *s/ Franklin L. Noel*
                   FRANKLIN L. NOEL
                   United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 19, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations

to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **December 19, 2011,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.